COLE NATIONAL CORPORATION, A CORPORATION OF THE STATE OF OHIO, PETITIONER, v. STATE BOARD OF EXAMINERS OF OPHTHALMIC DISPENSERS AND OPHTHALMIC TECHNICIANS, STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 8, 1969—Decided October 28, 1969.

Before Judges CONFORD, COLLESTER and KOLOVSKY.

*Mr. Thomas J. Brady* argued the cause for petitioner (*Messrs. Milton, Keane & DeBona,* attorneys).

*Miss Rachel Leff,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General, attorney; *Mr. Stephen L. Skillman,* Deputy Attorney General, of counsel).

*Mr. Robert P. McDonough* argued the cause for The Guild of Prescription Opticians of New Jersey, Inc. and The Society of Dispensing Opticians of New Jersey, Inc., *Amici Curiae (Messrs. McDonough, Murray & Meeker,* attorneys).

The opinion of the court was delivered by
KOLOVSKY, J. A. D. Respondent Board was created and established by *L.* 1952, *c.* 336 (now *N. J. S. A.* 52:17B–41.1 *et seq.*) :

An Act providing for the regulation of the practice of ophthalmic dispensing; authorizing the issuance of certificates to registered qualified ophthalmic dispensers and ophthalmic technicians; creating an examining board to determine their respective qualifications and conferring powers and duties thereupon; * * *.

Specifically exempted from the provisions of the act are physicians and optometrists duly licensed to practice medicine and optometry in this State.

In this proceeding under *R. R.* 4:88–10 petitioner contends that the Board's *Rule* 28, originally adopted in 1955, is on its face invalid and inconsistent with the provisions of the governing statute. The challenged rule provides:

> On and after February 16, 1955, no persons licensed to practice as an Ophthalmic Dispenser may practice as such other than under their own name. The use of trade names or corporate names by an Ophthalmic Dispenser is hereby specifically prohibited. This regulation will have no effect on those Ophthalmic Dispensers using a trade name or a corporate name prior to February 16, 1955.

The rule, if valid, is an insurmountable bar to petitioner's proposal to "operate," through employed licensed ophthalmic dispensers, "optical dispensing departments \* \* \* [in several Sears Roebuck & Co. stores in this State] under the name 'Sears Optical' or the 'Optical Department at Sears.' "

What petitioner refers to as "optical dispensing" is what the statute designates as "ophthalmic dispensing," defined in *N. J. S. A.* 52 :17B–41.5:

> A person practices ophthalmic dispensing within the meaning of the provisions of this act \* \* \* who prepares and dispenses lenses, spectacles, eyeglasses or appurtenances thereto to the intended wearers thereof on written prescriptions from physicians or optometrists duly licensed to practice their profession and in accordance with such prescriptions, interprets, measures, adapts, fits and adjusts such lenses, spectacles, eyeglasses or appurtenances thereto to the human face for the aid or correction of visual or ocular anomalies of the human eyes.

At the outset it is to be noted that the only issue before us is whether the rule is invalid insofar as it applies to or affects the action which petitioner desires to take. *Cf. State v. Wheeler Auto Driving School, Inc.*, 17 *N. J. Super.* 488 (*App. Div.* 1952). We are not concerned with the validity of the rule in its other aspects — for example, whether it

may validly apply to a corporation formed by one or more licensed ophthalmic dispensers under the authority of the Professional Service Corporation Act, *L.* 1962, *c.* 233 (*N. J. S. A.* 14:19–1 *et seq.*)

Petitioner is a business corporation, not a professional service corporation. It concedes that as such it may not be licensed to practice ophthalmic dispensing. Further, it recognizes that the Board has, under *N. J. S. A.* 52:17B–41. 13, power

> \* \* \* to promulgate such reasonable rules and regulations which shall be necessary to give full force and effect to the provisions of this act and to regulate the practice of ophthalmic dispensers and ophthalmic technicians in this State within the meaning hereof; *provided, however,* such rules and regulations are not inconsistent with the provisions of this act.

Petitioner contends that the rule is unreasonable and, further, that since there is no express provision in the statute prohibiting a corporation from employing licensed ophthalmic dispensers to practice their profession, a rule which would have that effect is inconsistent with the provisions of the act. We do not agree.

Petitioner offered no evidence to overcome the presumption of reasonableness which attaches to the rule. *Consolidation Coal Co. v. Kandle,* 105 *N. J. Super.* 104, 118–119 (*App. Div.* 1969), aff'd 54 *N. J.* 11 (1969). Moreover, a rule limiting the right to sell, dispense and supply ophthalmic appliances, eyeglasses and ophthalmic lenses to those whose conduct the Board can effectively control, its licensees, is on its face a reasonable and necessary implementation of the declared statutory policy:

> \* \* \* to protect the public health, welfare and safety by providing for the regulation of the sale, dispensing and supplying of all ophthalmic appliances, eyeglasses, or ophthalmic lenses to the ultimate wearer or consumer in this State. [*N. J. S. A.* 52:17B–41.1]

In considering petitioner's further argument that the rule is inconsistent with the act, we start with the settled

principle that "an administrative rule is presumptively valid and will not be rejected as inconsistent with a statute unless the inconsistency is palpable." *Daughters of Miriam Home, etc. v. Legalized Games, etc.,* 42 *N. J. Super.* 405, 415 (*App. Div.* 1956); see also *In re Weston,* 36 *N. J.* 258, 263–264 (1961), *cert.* den 369 *U. S.* 864, 82 *S. Ct.* 1029, 8 *L. Ed. 2d* 84 (1962). Petitioner has not sustained that burden.

Petitioner's reliance on *Jaeckle v. L. Bamberger & Co.,* 119 *N. J. Eq.* 126 (*Ch.* 1935), aff'd o. b. 120 *N. J. Eq.* 201 (*E. & A.* 1936), as authority in support of its contention is misplaced. *Jaeckle* held that a corporation department store owner employing a registered optometrist in its optical and optometrical department was not practicing optometry within the meaning of the act regulating the practice of optometry. See also *Weston v. New Jersey State Bd. of Optometrists,* 32 *N. J. Super.* 502, 509–510 (*App. Div.* 1954). The court construed section 22 of the Optometry Act, which imposed a penalty on an individual or a company employing an unlicensed person to practice optometry, as embodying a legislative declaration that such employment of a licensed or registered optometrist is permitted, saying:

> If the maxim be applied, whoever acts through an agent is considered as acting himself, it must be held that defendant is practicing optometry, but I think the maxim cannot be applied to the statute. The statutory scheme protects the public by requiring those who actually examine eyes to be properly qualified. It is immaterial whether they practice their profession on their own behalf or whether they are employed by other optometrists, or by persons not skilled in the art, or by corporations. Section 1 expressly includes in its scope a person who practices 'either on his own behalf or as an employe' of another, but not one who, through the agency of an employe, measures the powers of vision. Section 22 imposes a penalty on an individual or a company who employs to practice optometry a person not authorized under the statute. Clearly, a company which employs for this purpose a person who is authorized to practice optometry, is not subject to the penalty. It follows, in my opinion, that the legislature did not intend to prohibit a company from employing registered optometrists to practice their profession.
>
> Defendant is not practicing optometry within the meaning of the statute, and so the bill will be dismissed. [119 *N. J. Eq.,* at 127]

But there is no counterpart of section 22 of the Optometry Act in the act regulating ophthalmic dispensing and therefore no justification for applying the doctrine of *Jaeckle* to the latter statute.

Petitioner further argues that legislative approval of its proposed form of operation is to be implied from the language used in *N. J. S. A.* 52:17B–41.9 describing the apprenticeship to be served by a candidate for examination and certification as an ophthalmic dispenser, an apprenticeship

\* \* \* of not less than four calendar years' full-time employment under the supervision of an ophthalmic dispenser in an optical establishment, office, department store, shop or laboratory \* \* \* of which the last year in the State of New Jersey, at least, shall have been acquired within the five years last preceding the date of such ap plication.

We find no basis for the asserted implication in the language of the section, particularly since the apprenticeship need not be exclusively served with a licensed New Jersey ophthalmic dispenser; it may be served in other states or with an optometrist who is not subject to the provisions of the act.

The language of the act regulating ophthalmic dispensers and technicians, if read literally, would clearly bar petitioner's proposed plan of operations. The act imposes a penalty on one who practices as an ophthalmic dispenser or technician without having been licensed, *N. J. S. A.* 52:17B–41.18, and as the court said in *Jaeckle, supra,* at 127, "whoever acts through an agent is considered as acting himself. \* \* \*"

The Board, upon its creation in 1952, would have been justified in prohibiting the employment of licensed ophthalmic dispensers and technicians by business corporations. To have done so, however, would have resulted in an anomalous situation since licensed optometrists, whose powers (see *N. J. S. A.* 45:12–1) include and exceed those of ophthalmic dispensers and technicians, could be so employed.

*Jaeckle* and *Weston v. New Jersey State Bd. of Optometrists,* both *supra.* It was not unreasonable for the Board, in its administration of the act, to avoid that anomaly.

The reason for such avoidance disappeared when the Legislature amended the Optometry Act by enacting *L.* 1954, *c.* 227, to take effect on March 1, 1955. *Section* 6 of that act, now *N. J. S. A.* 45:12–19.1 provides:

It shall be unlawful for any person licensed to practice optometry under the laws of the State of New Jersey to advertise, practice or hold himself forth as being entitled to practice under a name other than his own, unless he be an associate of or an assistant to an optometrist licensed under the laws of the State of New Jersey, and it shall be unlawful for any unlicensed person, or any association or corporation directly or indirectly to engage or undertake to engage in the practice of optometry by utilizing the services, upon a salary, commission basis, or by any other means or method, of any person licensed to practice optometry in the State of New Jersey. It shall be unlawful for any optometrist to engage or undertake to engage in the practice of optometry in behalf of any unlicensed person, association or corporation, except that this shall not prohibit the employment by or the formation of partnerships between optometrists or physicians duly licensed in the State of New Jersey.

That the quoted amendment of the Optometry Act triggered the adoption of *Rule* 28 is evident from what appears in the minutes of the Board. At its meeting of February 16, 1955 the Deputy Attorney General assigned to the Board expressed his opinion that under the ophthalmic dispenser law "a licensee cannot operate under a trade style or corporate name unless he was using it before the law went into effect." The hardship which would result to some opticians if the Attorney General's opinion were applied retroactively was the subject of discussion at the Board's meetings in March and April 1955. At its meeting of May 18, 1955 "the Board ruled that as the law * * * permits the licensing of individuals only, all licensees must practice under their own name on and after February 16, 1955, the date of the ruling by the Attorney General's office, except those who were practicing under a trade style or corporate name prior to February 16, 1955."

That determination was embodied in *Rule* 28 which, as filed with the Secretary of State, was identical with the present rule (quoted above), except that it applied not only to ophthalmic dispensers but also to ophthalmic technicians.

█ In view of its prior administrative interpretation of the act and its reasons therefor, it was not improper or unreasonable for the Board to deal with the problem of prohibiting practice by its licensees in corporate names by adoption of a rule to that effect, nor was it unreasonable or discriminatory to conclude that fairness dictated that a grandfather clause be embodied therein. *Cf. Independent Electricians, etc., Ass'n of New Jersey v. New Jersey Board of Examiners, etc.,* 54 *N. J.* 466, 477–478 (1969). We therefore find no merit in petitioner's claim that the rule unlawfully discriminates in favor of those practicing ophthalmic dispensing in corporate names prior to February 16, 1955.

Nor do we find any valid basis for petitioner's contention that the present rule cannot be enforced against ophthalmic dispensers because it does not also apply to ophthalmic technicians. An ophthalmic technician is "one having a knowledge of optics and skilled in the technique of producing and reproducing ophthalmic lenses and kindred products, and mounting same to supporting materials." *N. J. S. A.* 52: 17B–41.5. Ophthalmic technicians were eliminated from the coverage of the rule by an amendment adopted by the Board on October 2 and November 20, 1963.

The differences between the activities of dispensers and technicians are such that there appears nothing unreasonable in the Board's determination that a differentiation should be made between ophthalmic dispensers, who deal with and should be required "to identify themeselves to the consuming public" (minutes of the Board's meeting of October 2, 1963), and technicians who do not deal with the consuming public.

We conclude that *Rule* 28 is not invalid or illegal in its application to petitioner. Its petition is therefore dismissed.